Filing # 58428317 E-Filed 06/29/2017 11:33:49 AM

FILED

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR COLLIER COUNTY, FLORIDA
CIVIL ACTION

2017 AUG -3 AM 11: 40

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

JOHN M. DEANGELIS, AS TRUSTEE OF THE
KELLY K. DEANGELIS REVOCABLE LIVING
TRUST DATED MAY 26, 1999,

    Plaintiff,

v.

JONATHAN D. MANN, JR, individually,

    Defendant.

Case No. 2017-CA

2:17-cv-447-FtM-29MRM

## COMPLAINT

Plaintiff, JOHN M. DEANGELIS, AS TRUSTEE OF THE KELLY K. DEANGELIS REVOCABLE LIVING TRUST DATED MAY 26, 1999, by and through his undersigned counsel, and pursuant to the Florida Rules of Civil Procedure, brings this Complaint against the Defendant, JONATHAN D. MANN, JR, individually, and states as follows:

### PARTIES

1. Plaintiff, JOHN M. DEANGELIS, AS TRUSTEE OF THE KELLY K. DEANGELIS REVOCABLE LIVING TRUST DATED MAY 26, 1999 (hereinafter "Plaintiff") is a resident of Collier County, Florida.

2. Defendant, JONATHAN D. MANN, JR. (hereinafter "Mann") is a resident of West Virginia who solicited Plaintiff for a fraudulent investment scheme via email and telephone communications into Collier County, Florida.

### JURISDICTION AND VENUE

3. This is an action for damages which exceeds $15,000.00 exclusive of interest, costs and attorneys' fees.



EXHIBIT
A

4. Venue and Jurisdiction are proper in this forum pursuant to Fla. Stat. §48.193 because Defendant committed tortious acts on Florida soil by fraudulently inducing Plaintiff to invest money with Defendant.

5. Furthermore, Defendant maintains and has maintained minimum contacts within the state. See *Machtinger v. Inertial Airline Services, Inc.*, 937 So. 2d 730, 736 (Fla. 3d DCA 2006); *Gerber Trade Fin., Inc. v. Bayou Dock Seafood Co.*, 917 So.2d 964 (Fla. 3d DCA 2005); *Wendt v. Horowitz*, 822 So. 2d 1252, 1258 (Fla. 2002); *Executive Tech Business Systems, Inc. v. New Oji Paper Co. Ltd.*, 752 So. 2d. 582 (Fla. 2002).

## GENERAL ALLEGATIONS

6. At all times relevant, John M. DeAngelis was acting as Trustee of the Kelly K. DeAngelis Revocable Living Trust Dated May 26, 1999 (hereinafter referred to as "Plaintiff").

7. At various times from late 2010 through early of 2011, Mann, acting in his individual capacity, discussed with Plaintiff a joint investment into a property located in Ohio which Mann referred to as "the Cox Prospect".

8. At all times material, Mann held himself out to be an expert in the field of gas and oil investment and operations.

9. At all times material, Mann was specifically aware of Plaintiff's lack of sophistication in the gas and oil industry.

10. Mann represented to the Plaintiff that if Plaintiff gave Mann the funds to pursue the Cox Prospect, Mann could immediately obtain the Cox Prospect property mineral rights and start to cut roads in the property in order to develop/operate existing oil wells on the property and begin to develop/operate new oil wells on the property. Mann promised substantial returns.

11. Mann represented that a worst case scenario after the purchase of the Cox Prospect would be a "flip" the rights to the Cox Prospect for a minimum return of 2-3 times Plaintiff's investment.

12. Following several telephone conversations between Plaintiff and Mann, Mann told Plaintiff that Mann and Plaintiff could buy the Cox Prospect rights for $135,000.

13. All telephone calls and emails made by Mann were to Plaintiff while Plaintiff was a resident in the State of Florida.

14. At all times material, Mann was aware that Plaintiff was a resident of Florida.

15. During a telephone call on or about March 17, 2011, on the basis of Mann's inducements, Plaintiff agreed to make the initial requested investment of $135,000 in order to acquire the wells on the Cox Prospect property in exchange for Plaintiff receiving a 50% net revenue interest in the wells on the Cox Prospect property.

16. At the time Mann induced Plaintiff to enter into the agreement, Mann had the specific intent to defraud the Plaintiff.

17. On or about March 17, 2011, induced by Mann's promise to develop the Cox Prospect and with an expectation of a return on his investment, Plaintiff sent Mann a wire transfer in the amount of $135,000 pursuant to their agreement.

18. On or about April 12, 2011, Mann sent Plaintiff, via email, a Purchase and Sale and Exploration Agreement (hereinafter the "Sham Purchase Agreement") ostensibly to memorialize the terms of their March 17, 2011 agreement.

19. The named parties to the Sham Purchase Agreement were Plaintiff and "Professional Land Resources, LL" ("PLR"). PLR is a West Virginia Limited Liability Company wholly owned by Mann and an *alter ego* of Mann which Mann utilized solely to try and insulate himself from personal liability for his fraudulent activity.

20. On April 12, 2011, Plaintiff dutifully and in good faith executed the Sham Purchase Agreement. Plaintiff was unaware that the Sham Purchase Agreement was worthless at the time he entered into it.

21. On or about May 16, 2011, Mann sent to Plaintiff via email an Assignment of Oil and Gas Lease which purportedly evidenced that the Cox Prospect land was assigned to PLR by Jeffrey Cox ("Cox").

22. Unbeknownst to Plaintiff, the material representations made by Mann to Plaintiff in order to induce Plaintiff's investment were untrue. More specifically:

   a. The Cox Prospect existent wells were not viable and, therefore, were without meaningful worth, a fact known by Mann at all times material and never disclosed to Plaintiff;

   b. The price for the Cox Prospect Assignment was not $135,000 as Mann represented to Plaintiff but was only $70,000; of that amount, Mann only paid Cox only $20,000 thereby breaching the underlying purchase agreement between Mann and Cox; facts known by Mann at times material and never disclosed to Plaintiff;

   c. Mann's transaction with Jeff Cox which ostensibly procured the oil and gas rights to the Cox Prospect property was itself fraudulent which resulted in a voiding of the Assignment pursuant to a legal action by Jeff Cox against Mann; facts known by Mann at times material and never disclosed to Plaintiff;

   d. Mann's plan from the outset was to utilize Plaintiff's funds for Mann's individual pecuniary benefit and not the Cox Prospect investment vehicle pitched to the Plaintiff by Mann.

23. After Plaintiff invested in the Cox Prospect, he would periodically request updates from Mann. Mann always had a response for why the project was not progressing (practical challenges in the field; market challenges; CPA change; family medical issues; etc.).

24. In response to Plaintiff's request for an update on April 11, 2014, Mann stated, "The plan as of now is to sale [sic] all rights, title and interest and move the acreage." Unbeknownst to Plaintiff at the time of this statement was that the Cox Prospect rights had

already been divested from Mann/PLR or were subject to divestment and were therefore worthless due to Mann's fraudulent transaction with Cox in procuring the Assignment.

25. Mann's April 11, 2014 statement to Plaintiff regarding the planned sale of the rights was made solely to lead the Plaintiff to believe there was still reasonable basis to expect a return on investment and conceal the true status of the Cox Prospect property rights and Mann's fraudulent conduct associated therewith.

26. Due to Mann's efforts to conceal his fraudulent activities, Plaintiff did not learn of the untrue nature of Mann's material representations until December of 2015; even then, he did not learn the full extent of Mann's fraud.

27. For example, it was not until April of 2017 that Plaintiff would learn of Cox's successful legal challenge against Mann for fraud associated with the procurement of the Assignment of the Cox Prospect which effectively returned to Cox any rights Mann/PLR had procured through the Assignment.

28. Plaintiff has also had to retain the services of the undersigned law firm in order to prosecute this action and is required to pay its fees.

## COUNT I – FRAUD

29. Plaintiff hereby re-alleges paragraphs 1 – 28 as if the allegations had been fully restated herein.

30. This is an action for fraud.

31. Mann knowingly made false statements to Plaintiff concerning the viability of the Cox Prospect investment as outlined in detail *supra* with the intention that said false representations would be relied upon by Plaintiff and induce Plaintiff to pay $135,000 to Mann.

32. Plaintiff reasonably relied on Mann's false representations and, thereupon, sent $135,000 to Mann.

5

33. As a direct and/or proximate result of Mann's false representations, Plaintiff has been damaged in an amount not less than the $135,000 given to Mann for the non-existent investment in the Cox Prospect, as well as the time value of said funds.

WHEREFORE, Plaintiff, JOHN M. DEANGELIS, AS TRUSTEE OF THE KELLY K. DEANGELIS REVOCABLE LIVING TRUST DATED MAY 26, 1999 hereby requests this Honorable Court enter judgment against Defendant, JONATHAN D. MANN, JR, individually, for damages, reasonable attorneys' fees and costs of this suit, and all other relief that the Court deems proper.

Dated June 29, 2017.

THE BOATMAN LAW FIRM, P.A.

By: s/ James A. Boatman, Jr.
James A. Boatman, Jr., Esq.
Fla. Bar No. 130184 – jab@boatman-law.com
Ernest A. Ricci, Esq.
Fla. Bar No. 100584 – ear@boatman-law.com
3021 Airport-Pulling Rd. N., Suite 202
Naples, Florida 34105
Primary Email: CourtFilings@boatman-law.com
(239) 330-1494 – Telephone
Attorneys for John M. DeAngelis, as Trustee of
the Kelly K. DeAngelis Revocable Living Trust
Dated May 26, 1999